Approved: _____
         SARAH L. KUSHNER
         Assistant United States Attorney

Before:  THE HONORABLE LISA MARGARET SMITH
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - x
                   :
UNITED STATES OF AMERICA    :   **COMPLAINT**
                   :
     - v. -       :   Violations of
                   :   18 U.S.C. §§ 641 & 2
GUSTAVO L. VILA,       :
                   :   COUNTY OF OFFENSE:
     Defendant.   :   WESTCHESTER
                   :
- - - - - - - - - - - - - - - x   20 MJ 8889

SOUTHERN DISTRICT OF NEW YORK, ss.:

     DANIEL B. GOLDSTEIN, being duly sworn, deposes and says that he is a Senior Special Agent with the United States Department of Justice, Office of the Inspector General ("DOJ OIG"), and charges as follows:

## COUNT ONE
### (Theft of Government Funds)

     1.  In or about October 2016, in the Southern District of New York and elsewhere, GUSTAVO L. VILA, the defendant, did embezzle, steal, purloin, and knowingly convert to his use and the use of another, and without authority, did sell, convey, and dispose of records, vouchers, money and things of value of the United States, and a department and agency thereof, to wit, the United States Department of Justice, which exceeded the sum of $1,000, and did receive, conceal, and retain the same with intent to convert it to his use and gain, knowing it to have been embezzled, stolen, purloined and converted, to wit, the defendant used for his own benefit payments from the September 11th Victim Compensation Fund that did not belong to him.

     (Title 18, United States Code, Sections 641 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2.    I have been employed as a Special Agent with the DOJ OIG for two months and have participated in the investigation of this case.  Prior to that, I served as a Special Agent with other federal agencies for over 16 years.  I am currently assigned to the Fraud Detection Office, a unit within DOJ OIG.  This affidavit is based upon my personal participation in the investigation of this case, my review of records, reports, and other documents collected in the course of this investigation, and my conversations with other law enforcement officers, as well as my training and experience.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**The September 11th Victim Compensation Fund**

3.    Based on my review of public information published by the federal government and conversations with other law enforcement officers who spoke with employees in the office of the September 11th Victim Compensation Fund ("VCF"), I have learned, among other things that:

a.    In the wake of the terrorist attacks that occurred in the United States on September 11, 2001, Congress created the September 11th Victim Compensation Fund to provide compensation with federal government funds to any individual who suffered physical harm or was killed as a result of the terrorist attacks, or the debris removal efforts that took place in the immediate aftermath of those attacks.  The original VCF operated from 2001-2004.

b.    On or about January 2, 2011, President Obama signed into law the James Zadroga 9/11 Health and Compensation Act of 2010 (the "Zadroga Act"), which reactivated the September 11th Victim Compensation Fund.  The reactivated VCF opened in October 2011, and was authorized to operate for a period of five years, ending in October 2016.[1]

---

[1] On December 18, 2015, President Obama reauthorized the Zadroga Act, extending the VCF for another five years, which allows individuals to submit their claims until December 18, 2020.

c.  Claimants seeking compensation from the VCF were authorized to work with an attorney and have the attorney submit a claim on their behalf to the VCF.  The Zadroga Act expressly limited the amount of fees any such attorney was allowed to charge "for services rendered in connection with [an individual's VCF] claim" to "10 percent of an award made . . . on such claim."  Zadroga Act, Pub. L. 111-347, Section 205.

d.  A claimant was allowed to authorize an attorney to receive the claimant's VCF compensation funds directly into a bank account maintained by the attorney's law firm.  To receive VCF payments on a claimant's behalf, an attorney was required to submit two documents to the VCF:  (1) a VCF ACH Payment Information Form, with the relevant bank account information, and (2) a document, signed by the claimant and either notarized or signed under penalty of perjury in compliance with 28 U.S.C. § 1746, confirming that the claimant had authorized the law firm account to receive the claimant's VCF payments.  Upon receipt of the claimant's VCF payments, the attorney was then to distribute those proceeds directly to the claimant.

**The Defendant**

4.  Based on my review of court filings, public documents, and my review of criminal history records, I have learned, among other things, that:

a.  Prior to 2015, GUSTAVO L. VILA, the defendant, was an attorney in Westchester County in New York and worked for his own firm, the Law Office of Gustavo L. Vila, PC (the "Law Firm").

b.  On or about April 8, 2015, VILA was arrested and charged with grand larceny in the second degree.

c.  On or about December 21, 2015, VILA pleaded guilty in Westchester County Supreme Court to grand larceny in the third degree, a felony.  Upon his conviction of that felony, VILA, was automatically disbarred and ceased to be an attorney. VILA remains disbarred.

d.  Vila lives in Westchester County.

**The Defendant's Representation of Victim-1**

5.    Based on my conversations with other law enforcement officers who interviewed an individual ("Victim-1") and his spouse, as well as my review of documents collected from Victim-1 and VCF, I have learned, among other things, that Victim-1 is a retired New York City Police Department ("NYPD") Officer who was diagnosed with, and suffered from, very serious, life-threatening medical conditions, including cancer, as a result of rescue and recovery work he performed at Ground Zero in 2001, in the wake of the September 11th terrorist attacks. In light of his medical conditions, Victim-1 engaged VILA, the defendant, as an attorney to help Victim-1 file a claim with, and obtain compensation from, the VCF.

6.    Based on my review of documents collected from VCF and from Victim-1, I have learned, among other things, that GUSTAVO L. VILA, the defendant, represented Victim-1 from at least in or about 2012 through at least in or about 2019, in connection with Victim 1's claim for compensation from the VCF. Throughout that period, VILA held himself out as an attorney to Victim-1 and to VCF.

7.    Based on my conversations with other law enforcement officers who interviewed Victim-1, his spouse, and employees at the VCF office, and my review of bank account records and documents collected from Victim-1 and VCF, I have learned, among other things, that:

a.    In or about May 2013, GUSTAVO L. VILA, the defendant, submitted a claim to VCF on behalf of Victim-1 ("Victim-1's Claim").

b.    On or about May 20, 2013, in connection with Victim-1's Claim, VILA completed, signed, and submitted to VCF a form, titled "Exhibit C to the Eligibility Form For Personal Injury Claimants Attorney Certification of Compliance with Provision on Limitation on Attorney Fees (Section 104.81)."  On that form, VILA, as Victim-1's attorney, declared under penalty of perjury that, among other things, "[t]he amount I have charged or will charge for the services I have rendered in connection with this claim, including expenses routinely incurred in the course of providing legal services, is not more than 10 percent of an award that might be paid on this claim," and "I have not charged nor will I charge for any expenses incurred in connection with this claim that are not routinely incurred in the course of providing legal services . . . ."

c.   On or about June 16, 2015, VILA submitted to
VCF documents authorizing the VCF to deposit Victim-1's
compensation award directly into a bank account controlled by
VILA's Law Firm (the "Bank Account").

d.   On or about September 13, 2016, the VCF
authorized an award of approximately $1,030,622.04 to Victim-1.

e.   On or about October 12, 2016, the VCF
deposited the full amount of that award into the Bank Account.
At that point, VILA was required to distribute all of that
money, less 10% for his purported attorney's fees, to Victim-1.
VILA, however, did not distribute any of that money to Victim-1
or otherwise inform Victim-1 about this deposit.

f.   On or about October 19, 2016, the VCF mailed
a letter to VILA's Law Firm that was intended for Victim-1.
That letter confirmed "that payment has been made on [Victim-
1's] claim and was received via electronic transfer by the
designated financial institution [i.e., the Bank Account]," and
stated that "[Victim-1's] claim is now paid in full."  VILA did
not give this letter to Victim-1 or otherwise inform Victim-1 of
the letter or its contents.

g.   On or about October 26, 2016, VILA sent a
check to Victim-1 in the amount of $103,062.20—approximately 10%
of Victim-1's compensation award from VCF.  The memo on the
check read "Sept 11th Comp. Fund."  This is the only portion of
his VCF compensation award that Victim-1 has received to date.

8.   Based on my conversations with other law
enforcement officers who interviewed Victim-1 and his spouse,
and my review of emails and text messages between GUSTAVO L.
VILA, the defendant, and Victim-1, I have learned, among other
things, that from at least in or about October 2016 to in or
about February 2020, VILA falsely represented to Victim-1 that
the VCF had not yet released the balance of Victim-1's VCF
award.

## The Defendant Stole Victim-1's VCF Award

9.   Based on my review of bank records, I have
learned, among other things, that other than the 10% he gave to
Victim-1, GUSTAVO L. VILA, the defendant, has not given Victim-
1's VCF compensation award to Victim-1.  Rather, VILA kept

Victim-1's VCF compensation award for himself and used that money for his own benefit.  For example:

a.   On or about October 1, 2016, the Bank Account had a balance of $0.

b.   On or about October 12, 2016, the VCF deposited the full amount of Victim-1's award—$1,030,622.04—into the Bank Account.

c.   On or about October 13, 2016, VILA wrote a check from the Bank Account to a third party for $190,000.

d.   On or about October 13, 2016, VILA wrote a check from the Bank Account to another law firm for $87,231.50.

e.   On or about October 14, 2016, VILA wrote two checks from the Bank Account to VILA's then-wife for $96,270.95 and $86,000, respectively.

f.   On or about October 15, 2016, VILA wrote a check from the Bank Account to the United States Treasury in the amount of $16,429 for his "2015 taxes."

g.   On or about October 19, 2016, VILA wrote a check from the Bank Account to himself for $6,000.

h.   On or about October 21, 2016, VILA wrote a check from the Bank Account to his son for $5,000.

i.   On or about October 28, 2016, VILA wrote a check from the Bank Account to VILA's then-wife for $103,062.20.

**The Defendant Admitted That He Stole Victim-1's VCF Award**

10.   Based on my conversations with other law enforcement officers who interviewed Victim-1 and his spouse, my review of audio recordings collected from Victim-1 and his spouse, and my review of emails between Victim-1 and GUSTAVO L. VILA, the defendant, I have learned, among other things that:

a.   In or about January 2020, Victim-1 learned for the first time that VILA had previously been disbarred and had not been licensed to practice law in New York since at least in or about 2015.

      b.   On or about February 3, 2020, Victim-1 contacted VCF, which informed Victim-1 that his entire award had been released in 2016, with no restrictions on its immediate distribution to Victim-1.  When confronted with that information, VILA agreed to meet with Victim-1 and his spouse.

      c.   On or about February 4 and February 8, 2020, Victim-1 and his spouse met with VILA.  During each meeting, VILA admitted to stealing Victim-1's VCF award.

    11.   For the reasons set forth above, there is probable cause to believe that GUSTAVO L. VILA, the defendant, stole and used for his own purposes approximately $927,559 of the approximately $1,030,622.04 that Victim-1 was awarded by the federal government's September 11th Victim Compensation Fund.

    WHEREFORE, I respectfully request that a warrant be issued for the arrest of GUSTAVO L. VILA, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

/s/ Daniel Goldstein, electronic signature placed by USMJ Lisa Margaret Smith with permission of the witness

_____

DANIEL GOLDSTEIN
Special Agent
Department of Justice
Office of the Inspector General

Cred # 308

Sworn to me through the transmission of this
Affidavit by reliable electronic means,
pursuant to Federal Rules of Criminal Procedure
41(d)(3) and 4.1 this,

<u>20</u>th day of August, 2020

_____

THE HONORABLE LISA MARGARET SMITH
United States Magistrate Judge
Southern District of New York