

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 12, 2021

**BY ECF AND ELECTRONIC MAIL**
The Honorable Vincent L. Briccetti
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

Re: *United States v. Gustavo L. Vila, 20 Cr. 495 (VB)*

Dear Judge Briccetti:

The Government respectfully submits this letter in advance of sentencing in this matter, currently scheduled for April 19, 2021, at 10:00 a.m. For the reasons explained below, the Government submits that a sentence at the top of the stipulated Guidelines range of 41 to 51 months' imprisonment (the "Guidelines Range") would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**A. Factual Background**

In the wake of the September 11 terrorist attacks, Congress created the 9/11 Victim Compensation Fund ("VCF") to provide compensation with federal government funds to any individual who suffered physical harm or was killed as a result of the terrorist attacks, or as a result of the debris removal efforts that took place in the immediate aftermath of those attacks. The victim in this case, John Ferreyra, was a New York City Police Department ("NYPD") officer when the attacks occurred. On September 11, 2001, Officer Ferreyra responded to Ground Zero, where he and his fellow officers helped direct people trying to leave the city, and assisted the commandeering of boats to get people across the river and over to New Jersey. For the next two months, Officer Ferreyra worked 12 to 16 hour days on search and rescue missions. As a result of the rescue and recovery work he performed at Ground Zero, Officer Ferreyra suffered serious, life-threatening medical conditions, including cancer. In or about 2005, Officer Ferreyra retired from the NYPD, after 20 years of service.

In or about 2012, Officer Ferreyra reached out to the defendant—an attorney whom Officer Ferreyra trusted in part because of the defendant's prior decades-long service with the NYPD—to help Officer Ferreyra file a claim (the "VCF Claim") for compensation from VCF. From at least in or about 2012 through at least in or about 2019, the defendant represented Officer Ferreyra, in connection with the VCF Claim. Throughout this representation, the defendant held himself out as an attorney to Officer Ferreyra and to VCF, despite the fact that in 2015, the defendant was

disbarred from the practice of law in New York. Specifically, in 2015, the defendant was convicted in Westchester County Supreme Court of grand larceny in the third degree, a felony, in violation of New York Penal Law Section 155.35, for an offense he committed in or about 2014 and 2015, when he stole more than $90,000 from a client he had represented in a property sale. The defendant was sentenced to probation, which ended on August 18, 2018. But as a result of that felony conviction, which the defendant never disclosed to Officer Ferreyra, the defendant was automatically disbarred in New York and was prohibited from, among other things, "practicing law in any form," "appearing as an attorney before any . . . public authority," giving any legal advice, and "holding himself out in any way as an attorney." *In re Vila*, 141 A.D.3d 81 (2d Dep't 2016). The conviction similarly resulted in the defendant's being disbarred in New Jersey in 2017.

Despite his disbarment, the defendant continued to hold himself out as an attorney to Officer Ferreyra and to VCF and to represent Officer Ferreyra as an attorney in connection with the VCF Claim. Officer Ferreyra, on the advice of the defendant, authorized the VCF to deposit any money it awarded Officer Ferreyra directly into the defendant's bank account. On or about September 13, 2016, the VCF determined that Officer Ferreyra was entitled to compensation from the fund in the amount of $1,030,622.04 (the "Award"). On or about October 12, 2016, the VCF deposited the full amount of the Award into the defendant's bank account. The defendant, however, represented to Officer Ferreyra that the VCF had only released 10 percent of the Award, that is, approximately $103,062, which the defendant sent Officer Ferreyra on or about October 26, 2016. That is the only portion of the Award that Officer Ferreyra received. The defendant stole the remaining 90 percent of the Award—that is, approximately $927,559.84—and used those funds for his own personal benefit, including to pay his own taxes and personal loans. Over the next three-plus years, the defendant continued to lie to Officer Ferreyra: from at least in or about October 2016 to in or about February 2020, the defendant repeatedly told Officer Ferreyra and his family that the VCF had not yet released the full amount of the Award. The defendant blamed the government for the purported delay and went out of his way to affirmatively misrepresent the VCF's actions to Officer Ferreyra and his family. For example, the defendant claimed that the purported delay was due to government shutdowns and the appointment of new Special Masters of the VCF. In January 2020, when Officer Ferreyra desperately asked whether "writ[ing] emails to [Senators] Schumer and Gillibrand or a few state senators[] would . . . help," the defendant responded, "[n]o because they are Democrats and right now the Republicans would be spiteful because [o]f impeachment."

Officer Ferreyra and his family's financial security depended on the Award. Over the years, Officer Ferreyra kept the defendant informed of Officer Ferreyra's ongoing medical procedures and mounting medical bills. The defendant visited Officer Ferreyra and his family at their home over the years and was in frequent contact with Officer Ferreyra. The defendant knew that without the Award, Officer Ferreyra and his wife struggled to support their two daughters. Nevertheless, the defendant continued to deceive them.

In or about January 2020, after learning from a family member that the defendant had been disbarred, Officer Ferreyra contacted the VCF directly. The VCF informed Officer Ferreyra that the Award had been released in full in October 2016. In or about February 2020, Officer Ferreyra confronted the defendant with this information. The defendant admitted he stole the Award,

claimed he would pay it back, and asked Officer Ferreyra not to report this crime to law enforcement.

On August 20, 2020, the defendant was charged by complaint with one count of theft of government funds, in violation of Title 18, United States Code, Sections 641 and 2. On September 18, 2020, the defendant waived his right to proceed by indictment and was charged by information (the "Information") with the same count.

On October 29, 2020, pursuant to a plea agreement (the "Plea Agreement") with the Government, the defendant pled guilty to the one-count Information before the Honorable Vincent L. Briccetti. In the Plea Agreement, the Government calculated that the applicable Guidelines Range was 41 to 51 months' imprisonment based on an offense level of 21 and a criminal history category of II. The defendant agreed to forfeiture in the amount of $922,559.84, and to make restitution in the amount of $922,559.84 (the "Restitution Amount").[1]

On January 14, 2021, the U.S. Probation Office completed the Presentence Investigation Report, which concurred with the Guidelines calculation set forth in the Plea Agreement. The Probation Office recommends a sentence of 46 months' imprisonment, followed by three years' supervised release.

## B. The Defendant's Submission

The defendant's submission, dated April 8, 2021 (Doc. No. 32), argues that the defendant should be sentenced below the Guidelines, to 36 months' imprisonment. The defendant seems to attribute his criminal conduct in this case to external factors, including "lawsuits with his old [law firm] partner," which left him with "catastrophic financial debt." (*Id.* at 4.) The defendant argues that "he should not be judged on the past few years" and that a below-Guidelines sentence is warranted based primarily on the defendant's "service in the NYC Police Department and his heroic efforts" in the wake of September 11. (*Id.* at 3.) The defendant claims that he has already been punished to a certain extent because, as a result of this crime, his wife of twenty years "divorced him," his son "refuses to speak to him," and he lost his home. (*Id.* at 4.)

---

[1] The Restitution Amount reflects the full amount of money that the defendant stole—that is, $927,559.84—less $5,000, which the defendant gave Officer Ferreyra in or about March 2020. In addition, following the defendant's guilty plea, the defendant gave Officer Ferreyra a check in the amount of approximately $54,000, which may be applied against the Restitution Amount, leaving the defendant with an outstanding balance of approximately $848,559.84 owed in restitution. Finally, it should be noted that Officer Ferreyra has received $400,000 from the Lawyer's Fund for Client Protection (the "Lawyer's Fund")—an entity established by the New York State Legislature to, among other things, "protect legal consumers from dishonest conduct in the practice of law, . . . and to promote public confidence in the administration of justice in the Empire State"— to help make up for the funds the defendant stole. By law, $400,000 is the maximum amount the Lawyer's Fund can award a victim. Thus, to the extent the defendant pays the outstanding Restitution Amount, the first approximately $448,559.84 should be paid directly to Officer Ferreyra. Any payments above that amount should then be paid to the Lawyer's Fund, as reimbursement for the $400,000 it awarded Officer Ferreyra.

## C.  Discussion

### 1.       Applicable Law

The Sentencing Guidelines provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings.  *Id.* at 49.  After that calculation, however, a court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to adequately deter criminal conduct, promote respect for the law, and protect the public from further crimes of the defendant.  *See* 18 U.S.C. § 3553(a).

### 2.   A Top-Of-The Guidelines Sentence Is Warranted In This Case

A top-of-the-Guidelines sentence is necessary in this case based on the nature, circumstances, and seriousness of the offense, and the need for the sentence imposed to afford adequate deterrence to this defendant and others, and to protect the public from further crimes of the defendant.  18 U.S.C. § 3553(a)(2)(A)-(C).

*First*, a sentence at the top of the Guidelines Range is necessary to reflect the nature, circumstances, and seriousness of the defendant's offense, and to provide just punishment.  The defendant—a disbarred attorney and former NYPD police officer—abused his position as a purported attorney and took advantage of the trust Officer Ferreyra placed in the defendant as both a former colleague and family friend.  Officer Ferreyra, a 20-year veteran of the NYPD, was entitled to compensation from the VCF based on the life-threatening illnesses he sustained for his heroic rescue and recovery work at Ground Zero.  Officer Ferreyra had to retire from the NYPD in 2005 due in part to his serious health conditions.  His family's financial security depended on receiving compensation from the VCF.  The defendant knew that.  The defendant, however, saw and seized an opportunity to enrich himself at Officer Ferreyra's expense.  The defendant advised Officer Ferreyra to authorize the VCF to deposit any award directly into the defendant's bank account.  When the VCF deposited the Award into that account, the defendant lied to Officer Ferreyra and told him that the VCF had only released 10 percent of the Award.  The defendant stole the other 90 percent—nearly $1 million—of the Award and used it for his own personal benefit, without Officer Ferreyra's knowledge or consent.  The defendant did not just steal from Officer Ferreyra—the defendant lied to Officer Ferreyra year after year, telling him that the VCF had not released the majority of the Award and blaming the government and politics for this purported delay.  And he did so despite his firsthand knowledge of Officer Ferreyra's difficult personal circumstances.  The defendant also lied about and abused his status as an attorney.  He never told Officer Ferreyra or the VCF that he was disbarred in 2015, let alone that such disbarment was based on a felony conviction for stealing tens of thousands of dollars from another client.  Rather, the defendant continued to hold himself out as an attorney to Officer Ferreyra and the VCF, and used his purported status as an attorney to gain access to the Award.  The defendant's crime

had serious consequences. He robbed, as Officer Ferreyra wrote to the Probation Office, "a life changing award" that Officer Ferreyra and his family had relied on for their future plans and financial well-being. Officer Ferreyra and his family's "hopes, dreams and plans" have changed because of the defendant's crime.

*Second*, the defendant's history and characteristics support a sentence at the top of the Guidelines Range. This crime was not an aberration. The defendant committed a similar offense against another client, for which he was convicted of a felony and disbarred. The defendant was on probation for that offense at the time he committed the instant offense. Moreover, the defendant's ability to repeatedly lie and mislead Officer Ferreyra about the Award and use his purported status as an attorney to steal—and then squander—nearly $1 million dollars reflects the defendant's true character. Even after he was caught, the defendant continued to lie to Officer Ferreyra. For example, in asking Officer Ferreyra not to report the offense to law enforcement, the defendant assured Officer Ferreyra that he would be repaid with the hundreds of thousands of dollars the defendant claimed he was going to receive from the sale of two properties he claimed to own. That too was a lie. The defendant, at most, partially owned one of the properties, which was sold in 2020. Indeed, of the hundreds of thousands of dollars he promised, the defendant has repaid only $59,000, and claims that includes the total amount the defendant received from the sale.

*Third*, a sentence at the top of the Guidelines Range is necessary to provide specific and general deterrence, and to protect others from being defrauded by the defendant. As discussed, in 2015, the defendant was convicted in New York of grand larceny in the third degree, a felony, for stealing tens of thousands of dollars from another client. The defendant was sentenced to a term of probation, which was terminated early in or about August 2018, and the defendant was automatically disbarred. The defendant committed the instant offense while on probation. The instant offense was similar to but even more egregious than the defendant's prior state offense. In this case, the defendant held himself out as an attorney even though he had been disbarred, stole nearly $1 million that the government had awarded Officer Ferreyra, the defendant's client, quickly squandered that money on his own personal debts and expenses, and then lied to Officer Ferreyra about that theft for more than three years. Based on his conduct in this case, it is clear that the defendant's prior sentence did not deter him from continuing to violate the law, including by abusing his status as a purported attorney. A sentence at the top of the Guidelines Range will hopefully accomplish what disbarment and the defendant's prior encounter with the criminal justice system did not: deter the defendant from future crimes, and send a clear message to other attorneys and individuals holding (or purporting to hold) positions of public or private trust in the community who would consider stealing from the government or private citizens and abusing their positions of trust to engage in criminal activity that such conduct carries serious consequences.

\* \* \*

The defendant's arguments for a below-Guidelines sentence are not persuasive. First, the defendant argues that his service as an NYPD officer and his work at Ground Zero are "mitigating circumstance[s]" that this Court should consider. Such aspects of the defendant's history actually cut against a below-Guidelines sentence. The defendant knew firsthand the traumatic and challenging circumstances that his fellow NYPD officers such as Officer Ferreyra faced in the

wake of the terrorist attacks.  Despite that shared experience, the defendant stole the money that was intended to compensate Officer Ferreyra for all that he suffered as a result of his role as a first responder at Ground Zero.  Second, the defendant argues that he has already lost so much as a result of the instant offense, including his marriage and his home. [redacted]

[redacted] As for the defendant's home, it was sold as part of his divorce settlement. Contrary to supporting a below-Guidelines sentence, these claims suggest that the defendant is not being entirely forthcoming about his actions.  Third, the defendant argues that his criminal conduct stemmed from the financial debt he was left with as a result of litigation with his former law partner.  This argument, however, reflects the defendant's attempt to shift blame to external factors and his failure to fully accept responsibility for his own actions.

## D.  Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence on the defendant of 51 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By: _Sarah Kushner_
_____
Sarah L. Kushner
Assistant United States Attorney
(212) 637-2676

cc:     Susanne Brody, Esq.